The opinion of the Court was delivered by
Wabdlaw, A. J.
Concurring with the Chancellor in all parts of his decree, not mentioned below, this Court will notice only the objections, which the appellant has here most strenuously urged.
*79 The contract was executed, and the bill itself seems to have been framed with that understanding. The advertisement for sale intimates no exception to a perfect title, and the contingent right of dower, which the wife of a living husband has, is an incumbrance which one bound to make a perfect title must remove. (Polk vs. Sumter, 2 Strob. 380; Jeter vs. Glenn, 9 Rich. 380.) So the complainant seems to have regarded his duty under the contract. The acts and letters of the complainant furnished evidence that Riggs was his agent, authorized to deliver the deed and to secure the purchase-money. The arrangement by. which Riggs retained $20,000 as a pledge to secure the renunciation of dower, was comprehended amongst the “so many ways of fair arrangement ” which the complainant entrusted to the discretion of Mr. Phillips and the “agents who represented ” him. If the pledge has proved insufficient, that constitutes no ground for complaint on the part of the complainant. The deed was not delivered as an escrow. If alteration in it was made after it left the hands of complainant, that has not been done since it came to the hands of the defendant; the alteration can be imputed to no evil motive, if it was made by Riggs, and in that case being conformable to the complainant’s duty, might well be supposed to have been made by his agent with his authority, (Duncan vs. Hodges, 4 McC. 239;) but if it was the unauthorized act of a stranger, it would in equity be struck out, rather than allowed to destroy the deed in the hands of an innocent grantee. (6 East, 310.)
The captivity of the complainant might require special caution in guarding against duress, in reference to all acts done by him subsequent to his capture, but cannot affect power given or other act done by him when he was free.
The Act of Congress, July, 1862, Statutes at Large, U. S. 591, by its sixth section makes void “sales, transfers, or conveyances of property” by other persons than “those *80 named as aforesaid and the complainant being a major in the army of the Confederate States, was in one of the classes “ named as aforesaid.” If that section, or any other part of the Act, embraces transfers by him, it had regard to the seizure there contemplated, and proceedings had thereunder, not to transfers made by one of the persons meant to another of them, unconnected with the offences intended to be punished.
The illegality imputed to Confederate treasury notes affects not an executed contract between persons in pari delicto, at a time when, and place where, the only government and only currency were those of belligerents engaged in hostility to the United States, if the contract was, as in this case seems to have been, 'in no way intended to aid the cause of those belligerents. (Philips vs. Hooker, Supreme Court of North Carolina, Amer. Law Register, Nov. 1867.)
The ordinance of tbe convention of September, 1865, which permits the true value and attendant circumstances to be shown for affecting substantial justice, is suitable to a case where the aid of a Court is sought to enforce a contract, but not to one where a contract has been executed and power is invoked to set it aside.
The motion is dismissed.
Dünkin, O. J., and Inglis, A, J., concurred.

Motions dismissed.